14-985-cr
*United States v. Humphries*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of May, two thousand sixteen.

PRESENT:    JOSÉ A. CABRANES,
            CHESTER J. STRAUB,
            RAYMOND J. LOHIER, JR.,
                    *Circuit Judges.*

---

UNITED STATES OF AMERICA,

    *Appellee,*       No. 14-985-cr

    v.

WILLIAM DAVID HUMPHRIES,

    *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR UNITED STATES OF AMERICA:** | RAJIT S. DOSANJH (Carl G. Eurenius, *on the brief*), Assistant United States Attorneys, *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, New York. |
| **FOR DEFENDANT-APPELLANT:** | DOUGLAS R. DOLLINGER, White Plains, New York. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 3, 2014 judgment of the District Court is **AFFIRMED**.

Defendant-appellant William David Humphries ("Humphries") appeals from a judgment of the District Court entered on April 3, 2014, following a jury trial, convicting him of interstate travel in aid of racketeering, in violation of the Travel Act, 18 U.S.C. § 1952(a)(1) and (a)(3); conspiracy to commit wire fraud to defeat Canadian tax revenue, in violation of 18 U.S.C. §§ 1343 and 1349; conspiracy to manufacture tobacco products without a license, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5762; and concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Humphries was sentenced principally to a total term of 72 months' imprisonment. This appeal followed.

On appeal, Humphries contends that (1) the evidence introduced at trial was insufficient as a matter of law to support each of his convictions; (2) the District Court abused its discretion by denying his request to present certain affirmative defenses as trial; (3) the District Court constructively amended the indictment in violation of his Fifth Amendment rights; and (4) the District Court abused its discretion by failing to suspend jury deliberations when it became apparent that he was no longer competent to stand trial. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the reasons set forth below, each of these arguments lacks merit.

**A.**

As an initial matter, the parties dispute which standard of review governs Humphries's sufficiency-of-the-evidence challenges. The government argues that Humphries waived, or at least forfeited, certain of his sufficiency-of-the-evidence arguments on appeal by failing to include them among the specific arguments in his Rule 29 motions for acquittal, and thus that, to the extent that the claims are reviewable at all, plain error review governs. Humphries disagrees, arguing that each "claimed error was asserted in one form or another and has been preserved for appeal," and thus that *de novo* review governs. Def. Reply 2. We need not decide which standard of review governs, however, because we conclude that, even if Humphries has preserved his specific challenges such that *de novo* review applies, the evidence introduced at trial was sufficient to sustain his convictions.

Even assuming, without deciding, that Humphries's challenges to the sufficiency of the evidence supporting his convictions are to be reviewed *de novo*, Humphries nevertheless "bears a heavy burden," *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks

omitted), because we review evidence on a sufficiency challenge "in the light most favorable to the government and draw[ ] all inferences in favor of the government," *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003).[1] We will uphold a conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Coplan*, 703 F.3d at 62 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

**B.**

Humphries first argues that the government failed to prove that he had the requisite intent to support a conviction for interstate travel in aid of racketeering, in violation of the Travel Act, 18 U.S.C. § 1952(a)(1) or (a)(3). This argument lacks merit.

To prove that Humphries violated § 1952(a)(1), the government had only to prove that (1) Humphries traveled in interstate commerce (2) with intent to "distribute the proceeds of any unlawful activity," and (3) that, after that interstate travel, he performed or attempted to perform the latter act. *See* 18 U.S.C. § 1952(a). The charged "unlawful activity" here consisted in part of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846.[2]

At trial, the government introduced ample evidence that, *inter alia*, Humphries had intent to "distribute the proceeds of" Johnson and Cook's marijuana distribution conspiracy. *See* 18 U.S.C. § 1952(a)(1). The evidence showed that Humphries traveled from South Carolina to the Akwesasne Mohawk Indian Reservation (the "AMIR") in New York and retrieved $70,000 of currency from Johnson and Cook. Johnson had warned Humphries not to take the currency, which was stored in a shoebox and wrapped in packing tape, because it "stunk" of marijuana, but Humphries nevertheless accepted it. When a Tribal Police investigator subsequently initiated a traffic stop of Humphries for driving while using a cell phone, Humphries disclosed the $70,000 in the shoebox but failed to disclose an additional $18,000 of currency in the center console of his vehicle, later uncovered by a

---

[1] The burden with respect to Humphries's conspiracy convictions is particularly heavy, as we afford special deference to the jury's findings, in recognition of the fact that "conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) (internal quotation marks omitted).

[2] The government concedes that its alternative theory of predicate unlawful activity—wire fraud conspiracy to defraud Canada of tax revenue through the untaxed sale of cigarettes imported from the United States in violation of 18 U.S.C. §§ 1343 and 1349—is not an "unlawful activity" under 18 U.S.C. § 1952(b). Nonetheless, Humphries has raised only a factual challenge to the sufficiency of the evidence, not a legal challenge, *see generally United States v. Desnoyers*, 637 F.3d 105, 109–10 (2d Cir. 2011), and, even if he had raised a *legal* challenge, we would affirm because the evidence in support of the conviction predicated on a conspiracy to distribute marijuana—a valid predicate unlawful activity—was substantial, and we are not convinced that the erroneous portion of the jury instruction affected the verdict, *see Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008).

drug-detecting canine. The Tribal Police officer testified that the currency in the shoebox emitted a "[s]trong odor of marijuana." App. 47. The evidence further showed that, during a recorded phone call between Humphries and Johnson, Humphries explained to Johnson that in the past he had transported currency for a fee and removed the odor by using coffee and a dryer. Additionally, Johnson testified that he had informed Humphries on at least two occasions that he had paid him in currency using proceeds of Johnson and Cook's marijuana trafficking operation—an operation in which Johnson had encouraged Humphries to invest—and that Johnson and Humphries had previously referred to marijuana as "the good tobacco." App. 121–24.

Viewing the record evidence in the light most favorable to the government, and drawing all inferences in favor of the government, *Henry*, 325 F.3d at 103, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Humphries had the requisite intent to violate § 1952(a)(1). Accordingly, we sustain Humphries's Travel Act conviction, and we need not address whether the evidence supports a conviction under § 1952(a)(3). *See United States v. Rutkoske*, 506 F.3d 170, 176 (2d Cir. 2007) ("[A] verdict should be affirmed when two theories of an offense are submitted to the jury and the evidence supports one theory but not the other.").

## C.

Humphries also challenges the sufficiency of the evidence supporting his conviction for conspiracy to commit wire fraud to defeat Canadian tax revenue, in violation of 18 U.S.C. §§ 1343 and 1349. Humphries again argues that the government failed to prove that he had the requisite intent to support his conviction. We disagree.

The government introduced evidence at trial showing that, *inter alia*, Humphries sent weekly loads of "Canadian Blend" tobacco to MHP, an unlicensed cigarette producer located on the AMIR, at the United States–Canada border, beginning in the summer of 2005, in exchange for U.S. currency. Johnson had discussed with Humphries whether Humphries should be paid in Canadian or U.S. currency, and Humphries had chosen the latter. Humphries also provided MHP with machinery and supplies to roll the cigarettes, as well as a mechanic to maintain the machinery; and at one point Johnson offered Humphries the opportunity to invest in MHP. The evidence further showed that MHP smuggled cigarettes into Canada and sold them without paying substantial taxes. In recorded conversations, Humphries and Johnson avoided saying the word "tobacco" when discussing their business operations, referring to deliveries instead as the arrival of a "friend" or "the other thing," just "in case someone was listening." Gov't App. 65, 71; Tr. 363–66. Humphries also expressed concern to Johnson about the nearby presence of Tribal Police. After Johnson began cooperating with law enforcement, he explained to Humphries that he needed "to get some cigarettes across [the] border," in response to which Humphries appeared to express no surprise and instead asked how many cases Johnson had "sitting in the warehouse." Gov't App. 134.

Viewing the record evidence in the light most favorable to the government, and drawing all inferences in favor of the government, *Henry*, 325 F.3d at 103, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Humphries had the requisite intent to support his wire fraud conspiracy conviction.

## D.

Humphries next challenges the sufficiency of the evidence supporting his conviction for conspiracy to manufacture tobacco products without a license, in violation of 18 U.S.C. § 371 and 26 U.S.C. § 5762. Specifically, Humphries argues that the government failed to prove "that he was a partner in MHP," and failed also to prove that any overt acts were taken in furtherance of the conspiracy because the sale of tobacco was unregulated at all relevant times. Def. Br. 30–35. We reject these arguments as meritless.

As set forth in 26 U.S.C. § 5762(a), "[w]hoever, with intent to defraud the United States . . . [e]ngages in business as a manufacturer . . . of tobacco products . . . without filing the bond and obtaining the permit where required by this chapter or regulations thereunder . . . shall, for each such offense, be fined not more than $10,000, or imprisoned not more than 5 years, or both." *See also* 18 U.S.C. § 371 (general federal conspiracy statute).

The evidence introduced at trial showed that neither Johnson, Humphries, nor Humphries's tobacco company ever applied for, or obtained, a federal tobacco-manufacturing permit between 2005 and 2009. Nonetheless, during the traffic stop in February of 2006, Humphries falsely informed a Tribal Police investigator that he had a federal license to sell tobacco, which information he thereafter did *not* convey to a criminal investigator with the Department of Homeland Security who later arrived on the scene, stating to that investigator only that he had a tribal license. Additionally, during a recorded phone call, Humphries discussed another cigarette manufacturer on the AMIR who had decided to "go federal," indicating that it would be "good for all of us" because the decision would cause the price of contraband cigarettes to rise. Tr. 367–69; Gov't App. 76. Based on the foregoing evidence and inferences arising therefrom, and the evidence of Humphries's involvement with MHP and his concerns about law enforcement surveillance of its operations, discussed above, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Humphries had the requisite intent to conspire to manufacture tobacco products without a license.[3] Accordingly, we sustain Humphries's conviction.

---

[3] That Humphries may not have been a formal partner of MHP is of no moment, given the evidence of the broader conspiracy. Also, contrary to Humphries's contention, Humphries was not charged with and convicted of conspiracy to *sell* tobacco without a license, but rather, conspiracy to *manufacture* tobacco without a license.

## CONCLUSION

We have considered all of the defendant-appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the April 3, 2014 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk